UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

AMELITA MANDINGO,

        Plaintiff,                                    Case No. 2:15-cv-12079

v.                                                             HONORABLE STEPHEN J. MURPHY, III

PNC BANK NATIONAL ASSOCIATION,

        Defendant.

_____/

**OPINION AND ORDER GRANTING
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [14]**

Plaintiff Amelita Mandingo brought suit against Defendants PNC National Bank Association and Trott & Trott, P.C., alleging six causes of action related to a foreclosure on her home. The Court dismissed the claims against Defendant Trott & Trott because Mandingo failed to timely serve them with process. PNC's motion for summary judgment followed. For the reasons stated below, the Court will grant the motion.

**BACKGROUND**

In 2006, Mandingo granted a mortgage on her property, 200 W. Boston Blvd., Detroit, Michigan 48206, to National City Bank of Indiana, which then sold it to the Government National Mortgage Association (Ginnie Mae). ECF 14-2, PgID 147–48 (Note); ECF 14-3, PgID 150–57 (Mortgage). National City Bank merged with PNC and repurchased the loan from Ginnie Mae. ECF 14-5, PgID 183. In 2009, Mandingo filed for bankruptcy; the Chapter 13 Bankruptcy Plan required Mandingo to continue to make mortgage payments to PNC. ECF 14-8, PgID 265.

In October 2011, however, Mandingo began to fall behind on mortgage payments. *See* ECF 14-6, PgID 209–12 (October 2011 payment on November 1, 2011; November

2011 payment on December 23, 2011; December 2011 payment on January 27, 2012; January 2012 payment on March 12, 2012; February 2012 payment on March 23, 2012; March 2012 payment on April 16, 2012; April 2012 payment on May 29, 2012; May 2012 payment on July 6, 2012); *see also* ECF 14-9, PgID 272 (Plaintiff's Payment Log). On August 2, 2012, Mandingo and PNC stipulated to the bankruptcy court that she owed $18,263.75 to PNC in delinquent monthly mortgage payments for June, July, and August of 2012. ECF 14-10, PgID 274–76. In the stipulation, Mandingo agreed to pay PNC "equal monthly installments of no less than $3,043.96/ea commencing September 1, 2012, in addition to maintaining subsequently required payments[.]" *Id.* at 275. Also, Mandingo agreed that if she failed to make the payments, PNC could "file a Notice of Default and submit to the Court for entry an [sic] order vacating the automatic stay and co-debtor stay, as applicable, no further notice, hearing, or motion being required[.]" *Id.* Mandingo made the first required payment in September 2012, and admits that she failed to make any further payments. ECF 14-4, PgID 171; *see also* ECF 14-9, PgID 272 (Plaintiff's Payment Log).

Before PNC filed the Notice of Default, however, it offered to allow Mandingo to apply for a loan modification. ECF 14-12, PgID 281–91. Mandingo submitted several applications and received a written denial of each application from PNC that stated the reasons for the denial. ECF 14-4, PgID 169–70; ECF 14-13, PgID 293–302. PNC filed a Notice of Default with the bankruptcy court and, on May 31, 2013, the bankruptcy court entered an order that allowed PNC to pursue its "federal and/or state law rights to the property." ECF 14-11, PgID 278.

In June 2013, Mandingo applied for assistance from Step Forward Michigan. ECF 14-

14, PgID 308–09. She was assisted by a housing counselor, Munai Nawash. After a months-long application process, Step Forward Michigan denied Mandingo's application because her assets exceeded the amount permitted for eligibility. *Id.* at 310. To reduce her total assets and obtain eligibility for the program, Mandingo and Nawash called PNC to make a $13,600 payment to PNC in October 2013. ECF 14-4, PgID 173; ECF 14-10, PgID 311. During this phone call, Mandingo, Nawash, and PNC discussed no other topics related to her mortgage. *Id.* Apart from the phone call, Mandingo had no other communications with PNC while she was applying to Step Forward Michigan. ECF 14-10, PgID 311. In late December 2013, Step Forward denied Mandingo's application because her past due amount exceeded $30,000. ECF 14-10, PgID 312.

On April 3, 2014, PNC notified Mandingo that she was in default of her loan and that she needed to pay $46,516.47 by May 3, 2014 to cure the default. ECF 14-15, PgID 319–20; ECF 14-4, PgID 174–75. Mandingo failed to cure the default. On May 20, 2014, PNC accelerated the loan balance, referred the matter to their foreclosure attorneys, and notified Mandingo. ECF 14-16, PgID 322; ECF 14-4, PgID 175. PNC posted a notice of the foreclosure sale on the property and in the Detroit Legal News on May 30, 2014, June 6, 2014, June 13, 2014, and June 20, 2014. ECF 14-17, PgID 326–27. On January 8, 2015, PNC foreclosed its mortgage interest in the property through a Sheriff's sale and purchased the property for $265,711.24. *Id.* at 324. The statutory redemption period expired on July 8, 2015. *Id.* at 327. Mandingo did not attempt to redeem the property. ECF 14-4, PgID 175. On June 8, 2015, however, Mandingo filed suit.

## LEGAL STANDARD

The Court must grant summary judgment "if the movant shows that there is no

genuine dispute as to any material fact and the movant is entitled to judgment as a matter

of law." Fed. R. Civ. P. 56(a). The moving party must identify specific portions of the record

"which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*

*Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party has met their burden,

the non-moving party may not simply rest on the pleadings, but must present "specific facts

showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio*

*Corp.*, 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56(e)).

A fact is material if proof of that fact would establish or refute an essential element of

the cause of action or defense. *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir. 1984).

A dispute over material facts is genuine "if the evidence is such that a reasonable jury could

return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242,

248 (1986). In considering a motion for summary judgment, the Court must view the facts

and draw all reasonable inferences "in the light most favorable to the nonmoving party." *60*

*Ivy St. Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir. 1987).

## DISCUSSION

Mandingo raises four grounds for relief against PNC: (1) common law slander of title

and statutory slander of title, Mich. Comp. Laws § 565.108; (2) quiet title; (3) innocent and

negligent misrepresentation; and (4) fraud based on intentional misrepresentation, silent

fraud, and bad-faith promises. PNC argues that Mandingo's claims fail either as a matter

of law or because she cannot show that record evidence creates a genuine dispute of

material fact.

I.   Common Law and Statutory Slander of Title

Mandingo alleges that PNC slandered her title to the property by publishing notices

4

in the chain-of-record that "falsely represented [PNC's] authority" to foreclose by "falsely alleging compliance" with Mich. Comp. Laws §§ 600.3205 and 3204. ECF 1, PgID 10. Also, she claims PNC made false statements to the bankruptcy court. *Id.*

To establish common-law or statutory slander of title "a plaintiff must show falsity, malice, and special damages, i.e., that the defendant maliciously published false statements that disparaged a plaintiff's right in property, causing special damages." *B & B Inv. Grp. v. Gitler*, 229 Mich. App. 1, 8 (1998); *see also* Mich. Comp. Laws § 565.108.

A. Bankruptcy Court Statements

At the outset, Mandingo's bankruptcy claim fails because it relies on privileged statements. In Michigan, "[s]tatements made during the course of judicial proceedings are absolutely privileged, provided they are relevant, material, or pertinent to the issue being tried." *Maiden v. Rozwood*, 461 Mich. 109, 134 (1999). Michigan's absolute judicial privilege applies broadly to include statements made in any relevant pleadings filed with the Court. *Bennett v. Attorney Gen. of Michigan*, 65 Mich. App. 203, 206 (1975). And the absolute privilege bars a claim for "damages in a civil action for slander or libel." *Schlinkert v. Henderson*, 331 Mich. 284, 290 (1951). PNC's statements to the bankruptcy court, therefore, may not be used to support Mandingo's civil action for slander of title.

Additionally, Mandingo stipulated to the allegedly slanderous statement. ECF 14-10, PgID 274 (stipulation to bankruptcy court signed by Mandingo's attorney for "[d]elinquency of $18,263.75" and stating "[t]he delinquency above includes the June–August 2012 payments"); ECF 14-4, PgID 168, 170–71 (Mandingo acknowledging that her attorney entered the stipulation). Her argument—three years after the fact—that the stipulation was a lie is unsupported by record evidence and does not create a triable question of fact. *See*

5

ssx

ECF 14-4, PgID 177.

### B. Chain of Record Statements

As an initial observation, the Court notes that the Sheriff's Deed contains no reference to Mich. Comp. Laws § 600.3205, which was repealed nearly one year before PNC published the deed. ECF 14-17, PgID 324–29. Thus her claim related to Mich. Comp. Laws § 600.3205 fails as a matter of law.

Although Mandingo does not identify which chain-of-record statement she believes to be slanderous, she most likely refers to PNC's notice-of-foreclosure statement: "Default has been made in the conditions of a mortgage made by Amelita L. Mandingo." ECF 14-17, PgID 326–27. But Mandingo alleges no facts to dispute that she was in default of her loan when PNC published the notice. And she does not dispute that, at the time of the statements, she had not made a payment on her loan since October 2013. ECF 14-4, PgID 172–73. Finally, she fails to produce any evidence that PNC published the statements with malice. Therefore, Mandingo has failed to show a genuine issue of fact that PNC slandered her title by publication of the foreclosure notice.

## II.    Quiet Title

In addition, Mandingo brings an action for quiet title. To state a claim for quiet title under Michigan law, a plaintiff must show "(a) the interest the plaintiff claims in the premises; (b) the interest the defendant claims in the premises; and (c) the facts establishing the superiority of the plaintiff's claim." MCR § 3.411(B)(2) (providing elements for action to quiet title under Mich. Comp. Laws § 600.2932); *see also Khadher v. PNC Bank*, N.A., 577 F. App'x 470, 477 (6th Cir. 2014).

But Mandingo presents no facts or evidence to show that her interest in the property

is superior to PNC's interest. Mandingo admitted that she does not own the property. ECF 14-4, PgID 164. And PNC has presented unrebutted proof of ownership in the property. *See* ECF 14-17, PgID 324–29 (Sheriff's Deed). As a result, her quiet-title cause of action fails as a matter of law.

To support her quiet-title claim, Mandingo alleges that PNC acted intentionally to preclude Mandingo's bankruptcy protection, failed to ensure compliance with Michigan foreclosure laws, and failed to advise Mandingo who she could contact for loan-repayment assistance. ECF 1 ¶¶ 34–40. Not only are these allegations immaterial to a quiet-title cause of action, they are also belied by the record. Mandingo stipulated to the bankruptcy order that she owed $18,263.75 in delinquent mortgage payments. ECF 14-10, PgID 274–76. Mandingo stipulated to the repayment plan to cure the delinquencies. *Id.* And Mandingo has offered no record evidence to show that PNC violated Michigan's foreclosure laws.

PNC, on the other hand, has offered substantial evidence of compliance. PNC and Mandingo agreed to a loan delinquency and repayment stipulation. *Id.* After Mandingo failed to make payments as required by the stipulation, PNC filed a notice of default with the bankruptcy court. ECF 14-11, PgID 278–79. Once the bankruptcy court ruled that Mandingo had failed to cure her mortgage deficiency, PNC published required public notices of the default. ECF 14-11, PgID 278–79; ECF 14-17, PgID 326–27. Finally, PNC sent Mandingo numerous letters encouraging her to apply for a loan modification, and responded in writing to her applications. ECF 14-12, PgID 281–91; ECF 14-13, PgID 293–302.

And—to the extent Mandingo argues that PNC violated Mich. Comp. Laws § 600.3205(a) - (d)—she is mistaken; the Michigan legislature repealed § 3205 on June 30,

2013, one year before PNC foreclosed on the property. ECF 14-19, PgID 363–64. Since Mandingo presented insufficient facts or evidence to dispute PNC's superior interest in the property, her quiet-title claim fails as a matter of law.

III.     Innocent and Negligent Misrepresentation

Mandingo claims that PNC made both negligent and innocent misrepresentations of material fact during the foreclosure. "The elements of innocent misrepresentation are: False and fraudulent misrepresentations made by one party to another (1) in a transaction between them, (2) any representation which are false in fact, (3) and actually deceive the other (4) are relied on by him to his damage are actionable, irrespective of whether the person making them acted in good faith in making them, (5) where the loss of the party deceived inures to the benefit of the other." *McKind v. Palms Invs, L.L.C.*, No. 273138, 2007 WL 1342557, at *5 (Mich. Ct. App. May 8, 2007). "The elements of negligent misrepresentation are: (1) a material misrepresentation by the defendant; (2) the representation was unintentionally false; (3) the representation is made in connection with the contract's formation; (4) the defendant and plaintiff were in privity of contract; (5) the plaintiff acted in reliance on the defendant's misrepresentation; (6) resulting damages to the plaintiff; and (7) the plaintiff's damages inured to the defendant's benefit." *Yaldu v. Bank of Am. Corp.*, 700 F. Supp. 2d 832, 845 (E.D. Mich. 2010) (quotations omitted).

Mandingo's innocent and negligent misrepresentation claims both require a common element: that the defendant made a false representation. Mandingo alleges that PNC made two false representations. First, she argues, PNC provided "a false notice of a non-existent corporation in the notices published and sent pursuant to MCL 600.3205." ECF 1 ¶ 50. As noted earlier, Mandingo cites to a law repealed a year prior to her foreclosure. ECF 14-19,

8

PgID 363–64. Moreover, she also fails to identify exactly which statement in the notice she alleges to be false.

Mandingo also argues that PNC provided false or inconsistent information as to who acquired the property from the Sheriff's sale. Her contention is undermined by the record. In a January 9, 2015 letter, PNC (through Trott & Trott) informed Mandingo that PNC had purchased the property. ECF 14-21, PgID 369–70. Additionally, the letter gave Mandingo contact information for PNC along with the expiration date of the statutory redemption period. *Id.*

In her response, Mandingo apparently abandons this line of argument altogether by failing to address PNC's notification-of-purchase evidence, or to identify PNC's allegedly false statement. *See* ECF 16, PgID 423–25. Instead, she argues that PNC made false representations to the bankruptcy court that Mandingo was three months behind on her mortgage. But, apart from her personal testimony that she was not in arrears, Mandingo offers nothing to rebut the compelling record evidence offered by PNC. Mandingo stipulated that she had a "[d]elinquincy of $18,263.75" for her "June–August 2012 [mortgage] payments." ECF 14-10, PgID 274; *see also* ECF 14-6, PgID 209–12 (Mandingo's Mortgage Payment History); ECF 14-9, PgID 272 (Mandingo's Payment Log). Her claim that the stipulation was a "lie" is unavailing. ECF 14-4, PgID 177. Thus, Mandingo fails to show a genuine issue of fact as to her misrepresentation claims.

IV.   Fraud

Mandingo raises claims for fraud, silent fraud, and bad-faith promises. Under Michigan law, a fraud claim must allege "(1) That defendant made a material representation; (2) that it was false; (3) that when he made it he knew that it was false, or

9

made it recklessly, without any knowledge of its truth and as a positive assertion; (4) that

he made it with the intention that it should be acted upon by plaintiff; (5) that plaintiff acted

in reliance upon it; and (6) that he thereby suffered injury." *Titan Ins. Co. v. Hyten*, 491

Mich. 547, 555 (2012) (quotations omitted). And a claim for silent fraud must allege that "(1)

the defendant failed to disclose a material fact;" (2) "the defendant had actual knowledge

of the fact; (3) the failure to disclose the fact gave the plaintiff a false impression; (4) when

the defendant failed to disclose the fact, he or she knew that the failure to disclose would

create a false impression;" (5) the defendant "intended that the plaintiff rely on the resulting

false impression;" (6) "the plaintiff indeed relied on the false impression; and (7) the plaintiff

suffered damages resulting from his or her reliance." *City of Dearborn v. Burton-Katzman

Dev. Co.*, No. 309758, 2014 WL 7212895, at *10 (Mich. Ct. App. Dec. 18, 2014). Lastly, a

plaintiff may allege—as an exception to the general rule that a promise of future conduct

cannot form the basis of a fraud or misrepresentation claim—that a party made a promise

"in bad-faith without intention of performance." *Hi-Way Motor Co. v. Int'l Harvester Co.*, 398

Mich. 330, 338 (1976).

In support of her fraud, silent fraud, and bad-faith promises claims, Mandingo raises

the same flawed legal theories she asserted in her previous claims. Specifically, she

alleges that PNC "falsely represented . . . the arrearage of Plaintiff's loan both to the

bankruptcy court and to Plaintiff, resulting in her loss of [bankruptcy] protection" and

disqualification from the Step Forward Michigan program. ECF 1 ¶ 57. As noted previously,

Plaintiff's claim that she was not three-months delinquent fails because she stipulated to

the bankruptcy order finding the delinquency, and failed to rebut PNC's documentary

evidence that she was three months in default in August 2012. S*ee* ECF 14-6, PgID

209–12; ECF 14-9, PgID 272.

Mandingo's argument is also flawed because she makes no claim that she relied on PNC's statement regarding her arrearage, either during the bankruptcy proceedings or during her application to Step Forward Michigan. According to Mandingo's testimony, she had no communications with PNC while she was applying for the program, other than to make a telephonic payment on her mortgage. ECF 14-4, PgID 173, 175. And she admits that she decided to make the telephonic payment to PNC based on her own calculations, to reduce her savings and in turn become eligible for Step Forward Michigan, not based on any statements from PNC. *Id.* at 172–73.

In response, Mandingo appears to abandon her fraud and bad-faith arguments and instead argues that PNC "failed to disclose it did not apply Plaintiff's payments for approximately seven months" and "failed to disclose for years that it did not do an escrow analysis for the time period of 2010–12." ECF 16, PgID 428. But "mere nondisclosure of information is insufficient" to state a claim for silent fraud. *Am. Furukawa, Inc. v. Isthihar Hossain, HT Wire & Cable Americas, LLC*, No. 14-CV-13633, 2016 WL 3444079, at *9 (E.D. Mich. June 23, 2016). Instead, Mandingo must show that PNC had a "pre-existing legal or equitable duty to disclose." *Tocco v. Richman Greer Prof'l Ass'n*, 553 F. App'x 473, 476 (6th Cir. 2013). Mandingo makes no showing that PNC had a legal duty to disclose any information, or that PNC ever denied her any information that she had requested. Thus, her fraud claims fails as a matter of law.

## CONCLUSION

Mandingo has not put forth sufficient documentary evidence to show a genuine dispute of material fact regarding her claims. And since her claims fail, the Court need not

analyze whether it may set aside a completed foreclosure sale following the expiration of the statutory redemption period. Accordingly, the Court will grant summary judgment to PNC.

## ORDER

**WHEREFORE**, it is hereby **ORDERED** that Defendant's Motion for Summary Judgment [14] is **GRANTED**.

**IT IS FURTHER ORDERED** that this case is **DISMISSED WITH PREJUDICE**.

**SO ORDERED**.

s/Stephen J. Murphy, III
STEPHEN J. MURPHY, III
United States District Court Judge

Dated:  March 8, 2017

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on March 8, 2017, by electronic and/or ordinary mail.

s/David P. Parker
Case Manager